Present: Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ.

STATE WATER CONTROL BOARD, ET AL.

v. Record No. 000736    OPINION BY JUSTICE ELIZABETH B. LACY
                                      March 2, 2001
SMITHFIELD FOODS, INC.

           FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                         Glen A. Tyler, Judge

    This appeal arises from an enforcement action brought by

the State Water Control Board and the Director of the

Department of Environmental Quality (collectively "the Board")

against Smithfield Foods, Inc. for alleged violations of a

permit issued pursuant to both state and federal law.

Following a successful action by the United States

Environmental Protection Agency (EPA) in federal court for

violations of the same permit, the Circuit Court of Isle of

Wight County sustained Smithfield's plea of res judicata and

dismissed the Board's enforcement case. For the following

reasons, we will affirm the judgment of the trial court

because privity exists between the Board and the EPA under the

facts of this case.

                                I.

    Virginia's State Water Control Law, Code §§ 62.1-44.2 to

-44.34:28, prohibits the discharge of any pollutants into

Virginia's waters unless in compliance with a Virginia

Pollutant Discharge Elimination System (VPDES) Permit. Code

§ 62.1-44.5.  Similarly, the federal Clean Water Act (CWA) requires a National Pollutant Discharge Elimination System (NPDES) Permit in order to discharge pollutants into any navigable waters in the United States.  33 U.S.C. § 1342(a). The CWA and federal regulations allow a state program to operate a discharge elimination system program in place of the federal program, provided that the state program is authorized under state law and has standards that are at least as stringent as the federal ones.  33 U.S.C. § 1342(b) & (c)(1); 40 C.F.R. § 122.1(a)(2).

In 1975, Virginia's program was approved by the EPA Administrator, and, pursuant to 33 U.S.C. § 1342, the EPA suspended its permitting program in the state.  40 Fed. Reg. 20,129 (May 8, 1975).  Thus, only the Board operates a pollutant discharge elimination system program in Virginia. Under this statutory scheme, a permit issued by Virginia serves as both a VPDES and a NPDES permit.  The Board has the primary authority to enforce this dual permit; however, the CWA expressly reserves the EPA's right to pursue its own enforcement actions with regard to such permit.  33 U.S.C. § 1342(i).

Smithfield was first issued a permit that regulated the discharge of wastewater into the Pagan River in 1986.  In 1988, the Board developed a "Policy for Nutrient Enriched

Waters" (Policy) that imposed more stringent limitations on phosphate discharges than required by the CWA. The Board modified Smithfield's permit in 1990 to reflect the new standards under the Policy. Smithfield filed administrative appeals challenging the new standards in both the Policy and the 1990 permit. To resolve their dispute, the Board and Smithfield negotiated an administrative order (Order) in March 1990 that authorized Smithfield to discharge phosphorus in excess of the limitations in the permit for a specified period of time.[1] The Board amended the Order on several occasions over the course of the next six years, each time granting Smithfield an extension for compliance. The EPA did not engage in any of these proceedings.

The EPA informed the Board in August 1996 that it intended to file suit against Smithfield in federal court and invited the Board to join in that litigation. The Board declined to join in the EPA's enforcement activity and instead filed this suit in the Circuit Court of Isle of Wight County to enforce violations of the Order and portions of the permit unrelated to the Order.

---

[1] These facts and others not at issue in this case are related in exacting detail in opinions from prior proceedings. See United States v. Smithfield Foods, Inc., 191 F.3d 516 (4th Cir. 1999), cert. denied, ___ U.S. ___, 121 S.Ct. 46 (2000); United States v. Smithfield Foods, Inc., 965 F. Supp. 769

In December 1996, while the Board's state action was pending, the EPA filed its federal action. The United States District Court for the Eastern District of Virginia found that the Order negotiated between the Board and Smithfield was not binding on the EPA and that Smithfield had engaged in numerous violations of its permit.[2] The United States Court of Appeals for the Fourth Circuit affirmed the finding of the district court that Smithfield was liable. United States v. Smithfield Foods, Inc., 191 F.3d 516, 519 (4th Cir. 1999), cert. denied, ___ U.S. ___, 121 S.Ct. 46 (2000).

Smithfield filed a plea in bar in the state action, asserting that the Board's enforcement action was now barred by the doctrine of res judicata.[3] The Board argued that res judicata did not apply because one of the essential elements of that doctrine, privity, did not exist between the Board and the EPA in the federal action. The circuit court found that

---

(E.D. Va. 1997); Treacy v. Smithfield Foods, Inc., 256 Va. 97, 500 S.E.2d 503 (1998).

[2] The federal district court concluded that the Order did not modify the 1992 permit because Smithfield never followed the procedures required to modify a permit, the Virginia statute which granted the Board authority to enter the Order did not authorize permit modification by the Board, and the EPA was not a party to the Order and did not consent to be bound by the Order. 965 F. Supp. at 787-89.

[3] The federal district court's final opinion was rendered August 8, 1997. Smithfield filed its plea in bar on August 12, 1997. The Fourth Circuit rendered its opinion on September 14, 1999. The state trial court sustained Smithfield's plea in bar on January 5, 2000.

the two agencies were in privity "insofar as they seek to enforce the terms of Smithfield Foods' NPDES Permit" and granted Smithfield's plea in bar. It is from this decision that the Board appeals.

## II.

Under the common law doctrine of res judicata, a final judgment on the merits of a claim precludes the parties from further litigation based on that claim. The doctrine protects litigants from multiple lawsuits, conserves judicial resources, and fosters certainty and reliance in legal relationships. Bill Greever Corp. v. Tazewell Nat'l Bank, 256 Va. 250, 254, 504 S.E.2d 854, 856 (1998). The doctrine applies unless specifically abrogated by statute. We accord the same preclusive effect of res judicata to foreign judgments as do courts in the foreign jurisdiction. Nottingham v. Weld, 237 Va. 416, 419, 377 S.E.2d 621, 622-23 (1989).[4] To establish the defense of res judicata, the proponent of the doctrine must establish identity of the remedies sought, identity of the cause of action, identity of the parties, and identity of the quality of the persons for or against whom the claim is made. Balbir Brar Assocs. v.

_____

[4] In this case, whether federal or state law is used to determine the existence of privity is immaterial, as the tests are virtually identical. Compare Andrews v. Daw, 201 F.3d

Consol. Trading & Servs. Corp., 252 Va. 341, 346, 477 S.E.2d 743, 746 (1996).

The only element of res judicata at issue in this case is the identity of the parties. Although the Board was not a party to the federal action, the doctrine of privity extends the preclusive effect of the prior judgment to the Board if the Board was in privity with the EPA with respect to the prior action. Smith v. Ware, 244 Va. 374, 376, 421 S.E.2d 444, 445 (1992).

There is no single fixed definition of privity for purposes of res judicata. Whether privity exists is determined on a case by case examination of the relationship and interests of the parties. The touchstone of privity for purposes of res judicata is that a party's interest is so identical with another that representation by one party is representation of the other's legal right. Nero v. Ferris, 222 Va. 807, 813, 284 S.E.2d 828, 831 (1981); Storm v. Nationwide Mut. Ins. Co., 199 Va. 130, 134-35, 97 S.E.2d 759, 762 (1957). The question in this case, then, is whether the interests of the EPA and the Board are so identical that the legal right advanced by the EPA in its federal action is the same legal right the Board seeks to vindicate here.

---

521, 524-25 (4th Cir. 2000), with Dotson v. Harman, 232 Va. 402, 404-05, 350 S.E.2d 642, 644 (1986).

6

In addressing this question, we distinguish between the identity of the legal interests advanced and the identity of the cause of action; that is, whether the Board and the EPA sought to enforce the same provisions of the permit. Though identity of the claim or cause of action is an essential element of res judicata, that issue is not before us. The Board and Smithfield agreed before the trial court that the only issue to be decided for purposes of res judicata was that of privity, and that is the only assignment of error presented to this Court. Therefore, in resolving the issue before us, we assume identity of the cause of action, which in this case means that the violations sued for and adjudicated in the federal case are the same as those presented in this enforcement action. Based on this assumption, we turn to the parties' arguments regarding the privity issue.

The Board asserts that privity does not exist because its interests in protecting the waters of the Commonwealth, and thus the legal rights it seeks to protect, are grounded in state constitutional and statutory law, Article XI of the Virginia Constitution and the State Water Control Law, whereas the interests of the EPA are founded in the CWA. The Board argues that this separation in the source of the interests and authority for enforcing those interests, along with the reservation of the EPA's enforcement rights in the CWA,

7

establishes that the interests and rights of the Board and the EPA are independent and precludes privity between the Board and the EPA.[5]  The Board also asserts that there was no unity of interest or legal right because the Board and the EPA did not share a subjective intent to enforce the permit together and did not coordinate their enforcement efforts.  We disagree with the Board.

Although the interests of the Board and the EPA in enforcing clean water requirements may be distinct in the abstract because the authority to enforce such requirements is grounded in different legislative enactments, the salient fact in this case is that the interests and rights of both the entities are vested in a single permit.  Two sovereign powers, the Commonwealth and the federal government, agreed that effective protection of their separate but mutual interests in clean water could be realized by qualifying the state regulatory program as provided in the CWA and thereby agreeing that the state program would be the entity issuing the permits designed to protect water quality.  Even though, in the abstract, the state and federal government could each administer its own program to protect water quality, they

_____

[5] To the extent this argument is intended to assert that the CWA was a "countervailing statutory policy" precluding the application of the doctrine of res judicata, that argument was

8

chose to participate in this joint endeavor. The ability of both the Board and the EPA to undertake enforcement activities, including enforcement of Smithfield's permit, does not override the joint undertaking based on the agreement that the permit issued by the Board be the mechanism for protection of the separate but mutual interests of the two sovereign governments. Thus they "share more than an abstract interest in enforcement." United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980).

An examination of the statutes and regulations governing the issuance of permits by the Board reinforces the mutuality of the EPA and the Board's interest or legal right in the permit. A permit issued by the Board pursuant to the CWA is deemed to comply with the other provisions of the Act and allows enforcement of the NPDES permit by the Board. 33 U.S.C. § 1342(b), (c) & (k). Furthermore, federal regulations regarding the EPA's permitting requirements describe the things a state "must do to obtain approval to operate its program in lieu of a Federal program." 40 C.F.R. § 122.1(a)(2) (emphasis added).

The Virginia regulations implementing the State Water Control Law provide that the VPDES permit "is equivalent to an

---

rejected in United States v. ITT Rayonier, Inc., 627 F.2d 996, 1002 (9th Cir. 1980).

NPDES permit," 9 VAC 25-31-10, that such permits are issued "pursuant to the Clean Water Act and the State Water Control Law," 9 VAC 25-31-20, and that compliance with the permit "constitutes compliance, for purposes of enforcement, with the [State Water Control] law and with . . . the CWA."  9 VAC 25-31-60.

There can be no question that by qualifying the state's water quality protection program under the CWA, the Board and the EPA determined that their interests in protecting the quality of water in Virginia would be protected by the permits issued by the Board pursuant to this joint program.  Thus, the Board and the EPA share an identity of interest in the permit issued to Smithfield in this case such that the Board's legal right was represented by the EPA in the federal action when the EPA sought to enforce the provisions of the permit.

This conclusion is consistent with the federal court cases cited to us which considered the issue of res judicata. In Harmon Industries, Inc. v. Browner, 191 F.3d 894 (8th Cir. 1999), the United States Court of Appeals for the Eighth Circuit considered whether res judicata applied to an action filed by the EPA to enforce provisions of the federal Resource Conservation and Recovery Act (the RCRA), 42 U.S.C. §§ 6901 – 6992k.  Although the res judicata holding was an alternative holding of the trial court, the Court of Appeals nevertheless

10

addressed the issue and upheld the trial court's conclusion that the doctrine applied to preclude the EPA's action. Applying traditional privity analysis, the Court of Appeals concluded that the state "advanced the exact same legal right under the statute as the EPA" because the RCRA did not allow the EPA an independent enforcement action and because the state action had the same force and effect as a federal enforcement action. Harmon, 191 F.3d at 903.

This conclusion did not establish the bright line rule suggested by the Board that privity exists only when the EPA does not have independent enforcement powers and that if such independent power exists, privity is precluded. In fact, in Rayonier, the Ninth Circuit Court of Appeals specifically stated that the "existence of concurrent enforcement powers does not per se negate the application of res judicata principles." 627 F.2d at 1001. In that case, the appeals court, again applying traditional privity analysis, held that privity existed between the EPA and the state enforcement authority regarding the enforcement of a state-issued permit pursuant to the CWA. Id. at 1003.

The thrust of these federal cases is, simply, that whether privity exists between the parties requires a case by case determination in which traditional principles of the doctrine are applied. The existence of dual enforcement

11

powers alone neither compels nor precludes a finding of privity.

Finally, the Board's assertions that there was no privity because there was no intent by the parties to be in privity when pursuing their separate enforcement actions are unavailing.  Privity does not require a shared subjective intent by the parties.  Harmon, 191 F.3d at 903.  Privity is an objective determination based upon the specific circumstances of each case.  Either the parties share an identity of interest or they do not.  Furthermore, the Board's argument that there could be no mutuality of interests in this case because the EPA did not seek to enforce the provisions of the Order and because the federal court specifically found that the EPA was not bound by the terms of the Order is not relevant here.  As we have said, these arguments relate to the issue of identity of claim or cause of action, an issue not before us in this appeal.  The relevant interests for purposes of privity in this case are those represented by the permit — the protection of the water quality.

Accordingly, for the above reasons, we will affirm the judgment of the trial court sustaining Smithfield's plea of res judicata and dismissing the Board's enforcement action.

Affirmed.