Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Carrico, S.J.[*]

ANITA LEE DAVIS

OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 020421          February 28, 2003

MARSHALL HOMES, INC. AND
MARSHALL MEREDITH, INDIVIDUALLY

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Robert B. Cromwell, Jr., Judge

I.

In this appeal, we consider whether the doctrine of res judicata bars a plaintiff's action to recover damages because of the defendants' alleged failure to pay deed of trust notes when the plaintiff had unsuccessfully filed a prior motion for judgment for actual fraud against the defendants.

II.

In 1999, plaintiff, Anita Lee Davis, filed a motion for judgment against Marshall Meredith, Inc., Marshall Homes, Inc., Marshall Meredith, individually, Perpetual Homes, Inc., and John M. Scott.  Plaintiff pled in her motion for judgment that these defendants committed acts of actual fraud against her.

Plaintiff alleged that on several occasions in 1995 she loaned money to defendants for the purpose of purchasing

_____

[*] Chief Justice Carrico presided and participated in the hearing and decision of this case prior to the effective date of his retirement on January 31, 2003.

various real properties that defendants agreed to refurbish and sell for a profit. Plaintiff alleged that defendants intentionally misrepresented to her the value of the real properties and deceived her because even though they told her that they would "refurbish" each property, defendants never intended to do so. Plaintiff stated in her motion for judgment that "[a]t the time of each request [by defendants] for a loan and representation as to the value of each real estate, the defendants knew that the actual value of the real estate was less than what they represented to the plaintiff, and as a result of this misrepresentation, the plaintiff lent them money for the purpose of the defendants purchasing the property, with additional funds available for refurbishing the property, at a 10% rate of interest. Further, not only did the defendants know that the value of the property was substantially less than what they had represented, they also knew at the time of the purchase that they were not going to refurbish the property and/or sell it for profit resulting in the plaintiff being left with the property and an outstanding Note based on an inflated property value."

Plaintiff stated in her motion for judgment that she sought "judgment against the defendants, jointly and severally, in the amount of $528,486.00 representing the

amount of the inflated price of the real estate, $250,000.00 in punitive damages, attorney's fees, pre and post judgment interest and any and all other costs expended herein." Subsequently, plaintiff's motion for judgment for actual fraud was dismissed with prejudice against defendants Marshall Meredith, Inc., Marshall Homes, Inc., and Marshall Meredith, individually.

In 2001, plaintiff filed her present action. She alleged in her amended motion for judgment that Marshall Homes, Inc., and Marshall Meredith, individually, executed four separate deed of trust notes and that these defendants "failed and refused to make any payments on the [notes]" and that the defendants "surrendered" the properties that secured the deed of trust notes to plaintiff. Plaintiff alleged that she "spent money to improve the properties for sale and incurred net losses . . . after the sale of each property." Plaintiff requested a "judgment against the defendants, jointly and severally, in the amount of One Hundred Sixty Four Thousand, Two Hundred Twenty Dollars and Seventy Six Cents ($164,220.76), plus interest at 10% per annum through date of sale, as well as interest accruing thereafter on the loss at 9% per annum, attorney's fees, and any and all other costs expended herein."

Defendants filed a plea of res judicata and asserted that plaintiff's action was barred because the circuit court had entered an order that dismissed with prejudice her prior action for actual fraud. Defendants argued that the factual allegations and damages claimed in the fraud action were based upon the same facts and damages described in the breach of contract action. The circuit court agreed with the defendants and entered an order that sustained the plea of res judicata and dismissed plaintiff's action with prejudice. Plaintiff appeals.

III.

A.

The principles that this Court must apply to our resolution of this appeal are well established and familiar. We have repeatedly stated that "[t]he bar of res judicata precludes relitigation of the same cause of action, or any part thereof, which could have been litigated between the same parties and their privies." Smith v. Ware, 244 Va. 374, 376, 421 S.E.2d 444, 445 (1992). Accord Scales v. Lewis, 261 Va. 379, 382, 541 S.E.2d 899, 901 (2001); Flora, Flora & Montague, Inc. v. Saunders, 235 Va. 306, 310, 367 S.E.2d 493, 495 (1988); Bates v. Devers, 214 Va. 667, 670-71, 202 S.E.2d 917, 920-21 (1974). We have consistently held that a litigant who seeks to bar a claim based upon the defense of res judicata

4

must establish four elements:  identity of the remedy sought;

identity of the cause of action; identity of the parties; and

identity of the quality of the persons for or against whom the

claim is made.  State Water Control Bd. v. Smithfield Foods,

Inc., 261 Va. 209, 214, 542 S.E.2d 766, 769 (2001); Balbir

Brar Assoc., Inc. v. Consolidated Trading and Serv. Corp., 252

Va. 341, 346, 477 S.E.2d 743, 746 (1996); Wright v. Castles,

232 Va. 218, 222, 349 S.E.2d 125, 128 (1986).

We have also stated that:

> "The judicially created doctrine of res judicata
> rests upon public policy considerations which favor
> certainty in the establishment of legal relations,
> demand an end to litigation, and seek to prevent the
> harassment of parties. . . .  The doctrine prevents
> 'relitigation of the same cause of action, or any
> part thereof which could have been litigated,
> between the same parties and their privies.' . . .
> A claim which 'could have been litigated' is one
> which 'if tried separately, would constitute claim-
> splitting.'
> " 'Claim-splitting' is bringing successive
> suits on the same cause of action where each suit
> addresses only a part of the claim. Jones v. Morris
> Plan Bank of Portsmouth, 168 Va. 284, 291, 191 S.E.
> 608, 610 (1937).  Courts have imposed a rule
> prohibiting claim-splitting based on public policy
> considerations similar to those underlying the
> doctrine of res judicata:  avoiding a multiplicity
> of suits, protecting against vexatious litigation,
> and avoiding the costs and expenses associated with
> numerous suits on the same cause of action."

Bill Greever Corp. v. Tazewell Nat'l Bank, 256 Va. 250, 254,

504 S.E.2d 854, 856-57 (1998).

5

The doctrine of res judicata only applies if the cause of action a plaintiff asserts in the pending proceeding is the same as the cause of action asserted in the former proceeding. City of Virginia Beach v. Harris, 259 Va. 220, 229, 523 S.E.2d 239, 243 (2000). And, the litigant who asserts the defense of res judicata has the burden of proving by a preponderance of the evidence that the claim is precluded by a prior judgment. Scales, 261 Va. at 383, 541 S.E.2d at 901.

Applying these well-established principles, we hold that the circuit court erred in concluding that plaintiff's cause of action for breach of contract is barred by the doctrine of res judicata. As we have already stated, the litigant who asserts the doctrine of res judicata as a bar to the plaintiff's claim must show, among other things, the "identity of the cause of action." In this case, defendants cannot satisfy this requirement.

In her first cause of action, plaintiff alleged acts of actual fraud on the part of the defendants. The basis of plaintiff's actual fraud claim was that she was damaged because of her reliance upon defendants' misrepresentations of the values of collateral that secured the deed of trust notes. We have held "that a 'litigant who prosecutes a cause of action for actual fraud must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact,

6

(3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.' " Prospect Dev. Co., Inc. v. Bershader, 258 Va. 75, 85, 515 S.E.2d 291, 297 (1999) (quoting Bryant v. Peckinpaugh, 241 Va. 172, 175, 400 S.E.2d 201, 203 (1991)); accord Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 557-58, 507 S.E.2d 344, 346 (1998); Evaluation Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994); Winn v. Aleda Constr. Co., Inc., 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984).

A review of the motion for judgment in the fraud action reveals that plaintiff would have been required to establish by clear and convincing evidence that defendants approached her and requested loans for the purpose of refurbishing and selling the real properties for a profit, defendants misrepresented the values of the real properties, plaintiff relied upon defendants' misrepresentations and loaned funds to defendants for the purchases of the real properties, defendants purchased the properties at their actual values, defendants never intended to honor their promises to plaintiff that they would "refurbish and sell the properties," and plaintiff incurred damages related to the misrepresentations.

In her later contract action to recover for losses sustained because of defendants' failure to pay the deed of

7

trust notes, plaintiff would have been required to prove, by a preponderance of the evidence, the existence of the notes, the defendants' failure to pay the notes, and damages.

We reject defendants' contention that plaintiff only had one cause of action, and that plaintiff improperly split her single cause of action because the "same evidence" was necessary to prove plaintiff's fraud and breach of contract claims. Defendants are incorrect for numerous reasons. This Court held in Brown v. Haley, 233 Va. 210, 216, 355 S.E.2d 563, 567 (1987), that "[t]he test to determine whether claims are part of a single cause of action is whether the same evidence is necessary to prove each claim." Application of this test compels us to conclude that plaintiff did not split her causes of action.

In her fraud action, plaintiff would have had to present evidence of the deed of trust notes and defendants' failure to satisfy those notes to show that she was damaged as a result of the misrepresentations. However, this evidence does not satisfy the remaining elements that plaintiff would have had to prove to establish a prima facie case of actual fraud by clear and convincing evidence. The mere fact that some evidence relevant in plaintiff's action for fraud may be relevant to prove her distinct and separate contract claim for nonpayment of the deed of trust notes does not, for purposes

of res judicata, mean that plaintiff only has one cause of action. Evidence of defendants' failure to satisfy the deed of trust notes does not prove that defendants made false representations of the values of the real properties intentionally and knowingly, with the intent to mislead plaintiff. Evidence of defendants' failure to satisfy the deed of trust notes does not establish plaintiff's reliance upon defendants' alleged misrepresentations.

It is a fundamental principle of jurisprudence that evidence which is not relevant is not admissible. Most of the evidence necessary to prove plaintiff's fraud action would have been inadmissible at a trial of plaintiff's contract action because of the lack of relevance. Surely, the circuit court would have committed error during a jury trial of plaintiff's contract action had the court permitted plaintiff to present evidence of defendants' acts of actual fraud.

Additionally, much of the evidence that plaintiff would have to present to establish damages in her breach of contract action is different from and not relevant to the damages she alleged in her fraud case. In her fraud action, plaintiff sought to recover damages based upon defendants' alleged misrepresentations of the values of the collateral that secured the deed of trust notes, and she sought punitive damages. In contrast, in plaintiff's breach of contract case,

she sought to recover money spent to improve the real properties and net losses she incurred after she sold the properties that she received from defendants in lieu of foreclosure.

Our prior decisions plainly illustrate the principle that a plaintiff's assertion of separate and distinct causes of action will defeat a defense of res judicata. For example, in Brown v. Haley, supra, we considered whether the doctrine of res judicata barred the plaintiffs' suit to enforce an implied easement. 233 Va. at 212, 355 S.E.2d at 565. In that case, Rufus R. Brown and Sallie W. Brown filed an action at law for ejectment against the defendants and/or their privies. The Browns alleged in the ejectment action that Dayton A. Haley and Lucy S. Haley had no interest in certain land. The circuit court ruled that the Browns were entitled to "sole possession" of the land. Subsequently, the Haleys filed an amended motion for declaratory judgment and bill of complaint against the Browns and requested that the circuit court declare that the Haleys possessed an easement to cross the Browns' land. The circuit court held that the Haleys had an implied easement over the Browns' land. The Browns argued before this Court that the doctrine of res judicata barred the maintenance of the Haleys' suit for the declaration of an

implied easement because of the prior ejectment action.  Id.
at 213-15, 355 S.E.2d at 566-67.

We observed in Haley that a judgment in favor of a
litigant bars relitigation of the same cause of action and any
part thereof that could have been litigated between the same
parties and their privies, but we explained that "[t]he
barring of a cause of action 'which could have been litigated'
is not directed to an unrelated claim which might permissibly
have been joined, but, to a claim which, if tried separately,
would constitute claim-splitting."  Id. at 215-16, 355 S.E.2d
at 567 (quoting Bates, 214 Va. at 670-71 n.4, 202 S.E.2d at
920-21 n.4).

We stated that "[t]he test to determine whether claims
are part of a single cause of action is whether the same
evidence is necessary to prove each claim."  Haley, 233 Va. at
216, 355 S.E.2d at 567.  Applying this test, we held that the
doctrine of res judicata did not bar the Haleys from
prosecuting their suit to establish an implied easement.  We
emphasized that ejectment is an action at law to determine
title and the right of possession of real property, whereas an
easement is a privilege to use the land of another in a
particular manner and for a particular purpose.  We held that
the existence of an easement is not relevant to the issue of
title.  We observed that ejectment involves ownership rights

11

and the proof necessary to establish this action generally consists of documents that vest title, whereas the proof necessary to establish the existence of an implied easement generally consists of facts that gave rise to the easement. Id. at 215-17, 355 S.E.2d at 567-68.

We noted that the elements that the Haleys were required to prove to establish their claim of an implied easement could not be proven by the facts presented in the ejectment action that showed that the Browns were the owners of the disputed land. Id. at 217, 355 S.E.2d at 568. We held that the ejectment action and the proceeding to establish an implied easement "were not part of the same cause of action because there was no identity of facts necessary to prove each claim." Id.

In the present case, just as in Haley, the doctrine of res judicata is simply not applicable. The facts necessary to prove plaintiff's action for actual fraud are different from the facts she must prove for her action based upon nonpayment of the deed of trust notes. In the present appeal, as in Haley, there is "no identity of facts necessary to prove each claim." Id.

We also observe that our holding today is consistent with our decision in Smith v. Ware, supra. In Ware, we considered whether the doctrine of res judicata barred a claim to recover

12

dower and damages asserted by a litigant who had unsuccessfully filed a motion for judgment for unlawful detainer. 244 Va. at 375, 421 S.E.2d at 445. Presley M. Smith and Pauline A. Smith were husband and wife. Mr. Smith, sole record owner of the real estate where the couple resided, died testate and his will and codicil were probated in November 1982. The will devised the residence to Mr. Smith's sister, Ellen Smith Ware. A codicil contained a provision which devised to Mrs. Smith the balance of a debt owed to Mr. Smith if any money remained after the estate's expenses were paid. The expenses exceeded the balance of the debt, and Mrs. Smith received nothing from her husband's estate. Id. at 375-76, 421 S.E.2d at 445.

Ware notified Mrs. Smith that she had to vacate the residence. Mrs. Smith left the premises and filed a motion for judgment for unlawful detainer. The circuit court ruled that the unlawful detainer action was barred by the applicable statute of limitations, and the case was dismissed. Subsequently, Mrs. Smith filed a bill of complaint against Ware seeking commutation of her dower interest in the residence and damages for withholding of her dower interest. Ware argued that the doctrine of res judicata barred any recovery. The circuit court agreed and dismissed the suit. Id. at 376, 421 S.E.2d at 445.

13

We disagreed with the circuit court's holding that the doctrine of res judicata precluded relitigation of the same cause of action or any part thereof, which could have been litigated between the same parties and their privies. We held, among other things, that the doctrine of res judicata did not bar Mrs. Smith's second suit because the cause of action in the second suit differed from the cause of action in the first proceeding. We stated:

> "The causes of action are . . . different. Mrs. Smith asserted a right to occupy the property in her motion for judgment for unlawful detainer. There, she relied upon former Code § 64.1-33 . . . which permitted a surviving spouse to reside in the marital residence without charge for rent, repairs, taxes, or insurance until dower or curtesy was assigned. Mrs. Smith, in her bill of complaint, seeks a commutation of her dower interest. She pled a different cause of action, relying upon former Code § 64.1-37 . . . ."

Id. at 377, 421 S.E.2d at 446. Just like the plaintiff in Ware, the plaintiff in this case filed separate causes of action and thus the doctrine of res judicata does not bar her subsequent cause of action.

We recognize that in Flora, Flora & Montague, Inc. v. Saunders, supra, we held that the doctrine of res judicata barred a plaintiff from prosecuting a subsequent cause of action for breach of contract. 235 Va. at 311, 367 S.E.2d at 496. However, our decision in Saunders is clearly distinguishable from the present appeal. In 1961, Willis E.

14

Board owned a tract of land that contained about 200 acres located in Franklin County near the waters of the Roanoke River. Board and his wife, Annie L. Board, Saunders' predecessors in title, executed an option agreement with John Hatcher Ferguson and John Hatcher Ferguson, Jr., who were Flora, Flora & Montague, Inc.'s (Flora's) predecessors in title. Pursuant to the agreement, the Boards granted the Fergusons a 10-year option to purchase a portion of the Boards' land, containing about 100 acres, subject to certain conditions. The Fergusons notified Saunders that they intended to exercise the option, but he refused to convey the real estate as provided in the option agreement. Id. at 307-08, 367 S.E.2d at 493-94.

In July 1971, the Fergusons filed a suit against Saunders for specific performance of the agreement. While the specific performance suit was pending, the Fergusons assigned the option agreement to Flora and others, who were added as complainants. The amended bill of complaint in this suit (the first suit) contained a general recitation about the option agreement and stated that "[a] copy of [the] Option is attached hereto and made a part hereof." Id. at 308-09, 367 S.E.2d at 494. The circuit court entered an order that Flora and the Fergusons were entitled to specific performance of the

15

contract and the option agreement.  Id. at 309, 367 S.E.2d at 494.

In 1984, Flora filed a suit in chancery against Saunders and requested that the court enforce certain terms of the option agreement that was the basis of the first suit and enter a decree that would require Saunders to convey to Flora certain land and easements.  Saunders filed a plea of res judicata, and the circuit court, after an ore tenus hearing, sustained the plea and dismissed the cause.  Id. at 307, 367 S.E.2d at 493.

We held that the circuit court properly sustained the plea of res judicata because "Flora could maintain only one suit to compel specific performance of the option agreement. The agreement's subject matter related solely to the sale of a tract of land and necessary appurtenances thereto.  Indeed, the first suit was instituted to have the court 'grant specific performance of [the] Contract,' not a part thereof. Moreover, the option agreement was attached to and made a part of the bill of complaint."  Id. at 311, 367 S.E.2d at 496.  We held that Flora sought "to make severable an indivisible contract.  Flora had but one cause of action; thus, Flora's claim had to be determined in one suit."  Id.

Unlike the circumstances in Saunders, the present case does not involve an attempt by a plaintiff to file two

16

separate lawsuits based upon the breach of one indivisible contract. Rather, as we have already stated, plaintiff's two lawsuits involved two separate and distinct causes of action.

B.

Our decision today also is supported by our holding in Allstar Towing, Inc. v. City of Alexandria, 231 Va. 421, 344 S.E.2d 903 (1986). In Allstar, for purposes of res judicata, we adopted a definition of the term "cause of action" as "an assertion of particular legal rights which have arisen out of a definable factual transaction." Id. at 425, 344 S.E.2d at 906 (quoting Bates v. Devers, 214 Va. 667, 672 n.8, 202 S.E.2d 917, 921 n.8 (1974)). We concluded in Allstar that the doctrine of res judicata did not bar a second action involving a challenge to the award of a contract by a municipality. In support of our holding, we emphasized that the two actions did not involve the same "definable factual transaction," noting that "the facts giving rise to the second cause of action were not even in existence when the first action was heard and decided on the merits." Allstar, 231 Va. at 425, 344 S.E.2d at 906.

In Allstar, we did not adopt a transactional analysis test when we decided whether the claims at issue were barred by the doctrine of res judicata. We were not even required to consider whether to use such a test because, as we just

17

stated, the facts that gave rise to the second cause of action in Allstar were not in existence when the first cause of action arose. Moreover, just one year after this Court decided Allstar, we implicitly rejected the transactional analysis test in Brown v. Haley, supra, when we stated that "[t]he test to determine whether claims are part of a single cause of action is whether the same evidence is necessary to prove each claim." 233 Va. at 216, 355 S.E.2d at 567. Therefore, in accordance with our precedent, we explicitly reject the application of the transactional analysis test when deciding whether a claim is barred by res judicata. See, e.g., Smithfield Foods, 261 Va. at 214, 542 S.E.2d at 769; Ware, 244 Va. at 376, 421 S.E.2d at 445; Saunders, 235 Va. at 310-11, 367 S.E.2d at 495; Haley, 233 Va. at 216, 355 S.E.2d at 567.

In the present appeal, while the facts supporting both the fraud and contract actions arose from defendants' efforts to procure financing of the properties, we nevertheless conclude that those facts did not arise out of the same "definable factual transaction." The alleged misrepresentations by defendants constituted a separate definable factual transaction. This separate definable factual transaction consisted of alleged misrepresentations of the values of the properties and future development plans

18

designed to obscure the actual values of the properties as collateral in order to obtain the money later secured by the notes.  The contract action arose from a distinct and separate definable factual transaction limited to breach of the terms and conditions appearing on the face of the notes as well as the damages related to the failure to satisfy the notes.  Thus, the contract claim before us is not defeated by the doctrine of res judicata on the grounds that it arose from the same "definable factual transaction" as the fraud claim.  Rather, the existence of separate "definable factual transactions" supporting the two claims before us requires rejection of the doctrine of res judicata.

Additionally, for purposes of res judicata, a "cause of action" involves an assertion of particular legal rights arising out of a definable factual transaction.  In this case, plaintiff's fraud and contract actions arose from different definable factual transactions and, just as important, these actions constituted assertions of different particular legal rights.  Clearly, the right to enforce a contract is a separate and distinct particular legal right from the right to enforce an action for fraud.

IV.

Accordingly, we will reverse the judgment of the circuit court and remand this case for a trial on the merits.

19

JUSTICE KINSER, with whom JUSTICE LACY and JUSTICE LEMONS join, dissenting.

The sole issue in this appeal is whether the breach of contract claim is part of the "same cause of action" as the fraud claim and thus "could have been litigated" with the motion for judgment alleging fraud.  Because I conclude that both claims assert legal rights that arose out of the same "definable factual transaction," I respectfully dissent and would affirm the circuit court's judgment sustaining the plea of res judicata.

The majority first holds that the doctrine of res judicata does not bar Davis' breach of contract claim because the defendants did not show "identity of the cause of action." The majority next holds that this Court's decision in Allstar Towing v. City of Alexandria, 231 Va. 421, 344 S.E.2d 903 (1986), supports its conclusion that Davis did not split her cause of action because the breach of contract claim did not arise out of the same "definable factual transaction" as the fraud claim.  In reaching these two conclusions, the majority cites numerous cases to support the "principle that a plaintiff's assertion of separate and distinct causes of action will defeat a defense of res judicata."  The majority

does not, however, consider the impact of Virginia's separation of law and equity upon the application of the res judicata bar. In my view, the principles of res judicata cannot be properly applied in this case without addressing that issue.

Res judicata is a judicially-created doctrine premised upon public policies favoring certainty in legal relations, an end to litigation, and the prevention of harassment of parties. Bates v. Devers, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974). However, as I will demonstrate, these policies cannot be fully realized in Virginia because of certain procedural barriers that restrict the application of the doctrine of res judicata. Those barriers include the separation of law and equity and the absence of a compulsory counterclaim rule. Prior to 1977, the inability to join tort and contract claims in the same proceeding also limited the use of the res judicata bar. When such barriers are not implicated in a particular situation, such as the present one, our decision in Allstar Towing provides the analytical framework for deciding whether the res judicata bar applies. I will now review the relevant cases that lead me to these conclusions and, in doing so, will explain why I respectfully dissent.

"The doctrine [of res judicata] is firmly established in our jurisprudence and should be maintained where applicable." Ward v. Charlton, 177 Va. 101, 115, 12 S.E.2d 791, 796 (1941); accord Bates, 214 Va. at 670, 202 S.E.2d at 920. This Court has explained the effect of the doctrine:

> When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties.

Gimbert v. Norfolk Southern R.R. Co., 152 Va. 684, 689-90, 148 S.E. 680, 682 (1929), quoted in Allstar Towing, 231 Va. at 424, 344 S.E.2d at 905. Stated differently, the doctrine "bars the relitigation of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies." Bates, 214 Va. at 670-71, 202 S.E.2d at 920-21. A claim that " 'could have been litigated' " is one that, if tried separately, would amount to " 'claim-splitting.' " Id. at 670 n.4, 202 S.E.2d at 920 n.4; accord Bill Greever Corp. v. Tazewell Nat'l Bank, 256 Va. 250, 254, 504 S.E.2d 854, 856 (1998).

22

For many years, this Court has held that a party asserting the res judicata bar must establish identity of the cause of action as well as identity of the remedy sought, identity of the parties, and identity of the quality of the persons for or against whom the claim is made.  See Ferebee v. Hungate, 192 Va. 32, 36, 63 S.E.2d 761, 764 (1951); Mowry v. City of Virginia Beach, 198 Va. 205, 211, 93 S.E.2d 323, 327 (1956); Wright v. Castles, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986); Smith v. Ware, 244, Va. 374, 376, 421 S.E.2d 444, 445 (1992).  However, it was not until our decisions in Bates v. Devers and Allstar Towing that we defined the term "cause of action."

In Bates, we explained that the scope of the term "cause of action" may vary depending on the context but that, for purposes of res judicata, it is the "assertion of particular legal rights which have arisen out of a definable factual transaction."  214 Va. at 672 n.8, 202 S.E.2d at 921 n.8. Thus, we held in Bates that a claim alleging breach of a 1968 instrument and claims based on earlier, separate instruments were " 'distinct divisible claims, depending on separate contracts, made at different times and upon different principles; and the evidence to support one [was] not necessary to support the other, but much of it that would be material to sustain the one would be irrelevant to the

23

other.' " Id. at 672, 202 S.E.2d at 922 (quoting Kelly v. Board of Public Works, 66 Va. (25 Gratt.) 755, 762-63 (1875)). In that holding, we implicitly recognized that the legal rights asserted by the plaintiff did not arise out of a single "definable factual transaction."

The definition of the term "cause of action" enunciated in Bates was central to our subsequent decision in Allstar Towing. In its first case, Allstar challenged a determination by the City of Alexandria that Allstar was a " 'non-responsible' bidder." 231 Va. at 425, 344 S.E.2d at 906. In a subsequent case filed by Allstar after the City had issued a second invitation to bid, Allstar sought relief on the basis that the City had awarded the contract to a bidder that allegedly did not satisfy certain specifications. Id. Because the facts underlying the second cause of action were not even in existence when the first case was decided, we concluded that "the legal rights asserted in the second action arose from a factual transaction that was different from the factual transaction giving rise to the assertion of legal rights in the first action." Id.

One year after Allstar Towing, we decided Brown v. Haley, 233 Va. 210, 355 S.E.2d 563 (1987). There, the plaintiffs, Dayton A. and Lucy S. Haley and others, asked the court to, among other things, declare that they had an easement to cross

the property of Rufus R. Brown to reach the waters of a lake and to enjoin the defendants from impeding access to the lake. 233 Va. at 214, 355 S.E.2d at 566.  However, invoking the principles of res judicata, Brown asserted that a prior ejectment action at law filed by him and Sallie W. Brown against the Haleys barred the second litigation concerning the easement.  Id.

We disagreed with Brown, finding that the "proof necessary to support the [ejectment] action consist[ed] of the documents which vest title in the owner and any other evidence related to the issue of title[;]" whereas, "[t]he existence of an easement is not relevant to the issue of title."  Id. at 217, 355 S.E.2d at 568.  The easement claimed in the second action could not have been established by the facts that proved ownership of the property in the ejectment action.  Id. "The two claims . . . were not part of the same cause of action because there was no identity of facts necessary to prove each claim."  Id.

Nor was there an identity of remedies because the two claims could not have been brought in one proceeding.  If the Haleys had asserted what would have been a counterclaim in the ejectment action, the court could not have granted the requested relief regarding the easement in that action since the relief was equitable in nature and the ejectment action

25

was at law.  Id. at 218, 355 S.E.2d at 568.  Therefore, the plaintiffs' recourse was to file the separate suit in equity. Id.  If we had accepted Brown's position, the practical effect would have been to implement, albeit implicitly, a compulsory counterclaim rule.

The holding in Brown did not mention the definition of the term "cause of action" adopted the year before in Allstar Towing for good reasons.  That definition was not relevant in Brown because of our distinction between law and equity and its impact upon the application of the res judicata bar.  That impact is exemplified by our decision in Wright v. Castles, decided after Allstar Towing and before Brown.

The issue in Wright was the effect of a chancery suit for injunctive relief upon a subsequent action at law seeking compensatory and punitive damages.  232 Va. at 220, 349 S.E.2d at 127.  In the chancery suit, the plaintiff sought to enjoin the defendant from interfering with the plaintiff's use of a certain road.  Id.  The bill of complaint contained no prayer for an award of damages.  Id.  In the subsequent action at law, the plaintiff alleged that the defendant had falsely and maliciously slandered his title by interfering with the use of the same road, and that the defendant had tortiously interfered with the consummation of a contract to sell the plaintiff's land.  Id.

26

Although we acknowledged that the same events gave rise to both proceedings, id., meaning that both claims arose out of a single "definable factual transaction," we, nevertheless, refused to apply the res judicata bar. Declining the defendant's invitation to abrogate Virginia's distinction between law and equity, we pointed out that a party seeking monetary damages in a tort case must bring the action on the law side of the court. Id. at 222, 349 S.E.2d at 128. However, a party asking for injunctive relief must sue in equity. Id. Thus, we concluded that "a chancery suit is not res judicata to a subsequent law action unless the very matter in controversy in the pending action was decided in the prior suit." Id.

The decision in Wright, rather than that in Allstar Towing, also provided the foundation for our refusal to apply the res judicata bar in Smith v. Ware. There, the plaintiff initially filed a motion for judgment for unlawful detainer, seeking not only possession of the residence in which she had resided after her husband's death but also damages. 244 Va. at 375, 421 S.E.2d at 445. The trial court ruled that the statute of limitations barred the unlawful detainer action. Id. at 376, 421 S.E.2d at 445. The plaintiff then filed a bill of complaint seeking commutation of her dower interest in

the residence and also damages for withholding that interest.
Id.

   We reversed the trial court's judgment that res judicata
barred litigation of the second suit.  Id.  Citing Wright but
not Allstar Towing, we held that there was neither an identity
of remedies nor an identity of causes of action as between the
motion for judgment for unlawful detainer and the bill of
complaint for commutation of the plaintiff's dower interest.
Id.  In the unlawful detainer action, the plaintiff sought
possession of the property based on the provisions of former
Code § 64.1-33; whereas, in the chancery suit, she asked for a
commutation of her dower interest, relying upon former Code
§ 64.1-37.  Id. at 377, 421 S.E.2d at 446.

   In contrast, the decision in Allstar Towing had a bearing
on our application of the res judicata bar in Flora, Flora &
Montague, Inc. v. Saunders, 235 Va. 306, 367 S.E.2d 493
(1988), because the law-equity distinction was not a factor.
There, a vendee first sought specific performance of an option
agreement to purchase real estate and asked the court to
convey the property at issue.  Id. at 309, 367 S.E.2d at 494.
The second suit, also filed in chancery, involved the vendee's
claim that, among other things, it was entitled to use certain
rights-of-way, pursuant to the option agreement, over the

residual land owned by the vendor.  Id. at 310, 367 S.E.2d at 495.

We held that the second suit was barred by the doctrine of res judicata.  Id.  The vendee had but one cause of action to compel specific performance of the option agreement because the agreement's subject matter concerned the sale of the land and the necessary appurtenances thereto.  Id. at 311-12, 367 S.E.2d at 496.  In other words, there was a single "definable factual transaction" out of which both claims arose.

We did not apply the doctrine of res judicata in Brown, Wright, and Smith because the respective plaintiff in each of those cases sought a remedy that was not available in a prior proceeding due to the separation of law and equity.  These cases unquestionably demonstrate that the distinction between law and equity limits the application of the res judicata bar in Virginia.  Indeed, that distinction was the essence of the Wright decision.  However, the separation of law and equity did not play a role in Bates or Flora, nor is it a factor in the case before us.  Like the plaintiffs in Bates and Flora, Davis sought relief on the same side of the court in both of her cases.

A jurisdiction's separation of law from equity is recognized in the Restatement of Judgments (Second) § 26(1)(c) (1982), as an exception to the general rule concerning claim-

29

splitting. The rule that "a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . , includ[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction . . . out of which the action arose," id. at § 24, does not apply when:

> [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief[.]

Id. at § 26(c). Instead, the rule against claim-splitting is

> predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law.

Id. at § 26(1)(c) cmt. c. One of the formal barriers referenced in the Restatement is the separation of law and equity. Id.; see also id. at § 25 cmt. i.

That such formal barriers affect the rule against claim-splitting is not a new concept in Virginia. In Bates, where we first defined the term "cause of action" for res judicata purposes, this Court acknowledged that procedural barriers can restrict the application of res judicata principles. There,

30

we cited the Restatement of Judgments §§ 47, 62, 83 (1942), in our discussion of a claim that "could have been litigated." 214 Va. at 671, 202 S.E.2d at 921. Comment c to § 62 provided that "[a]s a result of one tortious act or breach of contract there may be a number of invasions of a single interest or of different interests." Restatement of Judgments § 62 cmt. c (1942). To decide whether there is a single cause of action arising from the tortious act or breach of contract, the first question, being one of procedure, was whether a plaintiff "can recover in one action for all of the harms or breaches of contract[.]" Id. "[I]f because of procedural rules separate actions must be brought," a judgment for one invasion would not prevent an action for others wrongs. Id.

However, if all claims could have been brought in one proceeding, the next question concerned the effect of a judgment for one invasion or breach on other claims not included in that action. Id. "This [was] a question of substantive law. The answer depend[ed] upon whether the events or series of events [were] regarded as constituting one inseparable cause of action at the time of the judgment." Id.

In addition to the separation of law and equity, another procedural barrier affected the application of the res judicata bar in the past when tort and contract claims could not be joined in the same proceeding in Virginia. See, e.g.,

Standard Products Co. v. Wooldridge & Co., Ltd., 214 Va. 476, 481, 201 S.E.2d 801, 805 (1974); Kavanaugh v. Donovan, 186 Va. 85, 93, 41 S.E.2d 489, 493 (1947). However, in 1977, the General Assembly eliminated that barrier with the enactment of § 8.01-272. In pertinent part, that statute provides that "[a] party may join a claim in tort with one in contract provided that all claims so joined arise out of the same transaction or occurrence." In Code § 8.01-281, the General Assembly also authorized the pleading of alternative facts and theories of recovery "provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence."

As we stated in Fox v. Deese, 234 Va. 412, 423, 362 S.E.2d 699, 705 (1987), those statutes "represented a radical departure from the common-law pleading rule[.]" Similarly, our implementation in Allstar Towing of the concept that a cause of action, for purposes of res judicata, must be viewed in terms of a "definable factual transaction" was a shift in our res judicata jurisprudence to the approach employed by a majority of jurisdictions:

> The present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to

32

> support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

Restatement of Judgments (Second) § 24(1) cmt. a. See also, Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464, 469-70 (3rd Cir. 1950); Ramseyer v. Ramseyer, 569 P.2d 358, 360 (Idaho 1977); Kent County Bd. of Educ. v. Bilbrough, 525 A.2d 232, 236 (Md. 1987); Eastern Marine Constr. Corp. v. First Southern Leasing, Ltd., 525 A.2d 709, 712 (N.H. 1987).

Our shift was consistent with the General Assembly's transactional approach employed in Code §§ 8.01-272 and -281, as evidenced by its use of the language "same transaction or occurrence." Both concepts, "definable factual transaction" and "same transaction or occurrence," advance public policies embracing judicial economy, ending litigation, providing certainty in legal relationships, and preventing party harassment. However, a transactional approach must "strike a delicate balance between, on one hand, the interests of the defendant and the courts in bringing litigation to a close and, on the other hand, the interests of the plaintiff in the vindication of a just claim." Restatement of Judgments (Second) § 24 cmt. b.

The transactional analysis utilized in Allstar Towing is limited by the distinction between law and equity. In determining whether the principles of res judicata bar a

particular proceeding, the Allstar Towing definition of the term "cause of action" becomes relevant only when the law-equity distinction is not in play. In other words, legal rights asserted in two separate cases could arise out of a single "identifiable factual transaction," as they clearly did in Wright, but the second proceeding would not be barred if the relief sought therein was not available in the prior proceeding due to the separation of law and equity. See Wright, 232 Va. at 222, 349 S.E.2d at 128. I believe that is the reason Allstar Towing was not mentioned in the Brown, Wright, and Smith decisions.

The majority, however, states that this Court did not adopt a transactional approach in Allstar Towing. I disagree. The definition of the term "cause of action," first introduced in Bates and then explicitly relied upon in Allstar Towing and Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups, A, B and C, 251 Va. 417, 434, 468 S.E.2d 894, 904 (1996), employs the phrase "definable factual transaction." I find no analytical difference between that phrase and the phrase "same transaction or occurrence," which is the language used by the General Assembly in Code §§ 8.01-272 and -281 and characterized by this Court as "so plain and unambiguous that it requires no interpretation." Powers v. Cherin, 249 Va. 33, 37, 452 S.E.2d 666, 669 (1995). If use of

34

the language "definable factual transaction" in the definition of the term "cause of action" was not indicative of this Court's decision to use a transactional analysis when deciding whether to apply the res judicata bar, then what was the intent of the Court?

In truth, the effect of the majority's explicit rejection of a transactional approach is to overrule our decision in Allstar Towing.  However, the majority does not explain why this precedent should be cast aside.  Despite rejecting a transactional approach and overruling Allstar Towing, the majority, nevertheless, utilizes the Allstar Towing definition of the term "cause of action," and the majority states that its decision is supported by the holding in that case.

I find no reason to overrule the precedent established in Allstar Towing.  Thus, I conclude that the dispositive inquiry in this case, since the separation of law and equity is not a factor, is whether Davis' claim alleging breach of contract and the former claim alleging fraud arose out of a single "definable factual transaction."  In my opinion, they did.

The "definable factual transaction" was the events surrounding Anita Lee Davis' loans to Marshall Homes, Inc. and others for the purpose of purchasing certain parcels of real estate.  In the present motion for judgment, Davis alleged breach of contract for failure to pay four deed of trust

notes.  Those notes, signed by Marshall Homes, evidenced the loans made by Davis to purchase four parcels of real estate that previously had been deeded to her in lieu of foreclosure and were executed in conjunction with Davis' loans to purchase those properties.

Although the majority asserts that Marshall's alleged misrepresentations constituted one "definable factual transaction" and the terms and conditions of the notes arose from a separate "definable factual transaction," those notes did not come into existence at some later point in time or as a result of different negotiations between the parties.  Even the majority acknowledges that "the facts supporting both the fraud and contract actions arose from defendants' efforts to procure financing of the properties[.]"

The majority also calls Davis' claims different legal rights and emphasizes that the elements of a claim for fraud are different from the elements of a claim for breach of contract.  However, the determination whether a particular claim "could have been litigated" in a prior action and is, thus, barred by the doctrine of res judicata does not depend on whether the elements of the prior claim and the present claim are identical.  In Jones v. Morris Plan Bank of Portsmouth, 168 Va. 284, 191 S.E. 608 (1937), this Court stated:

36

> If suit is brought for a part of a claim, a judgment obtained in that action precludes the plaintiff from bringing a second action for the residue of the claim, <u>notwithstanding [that] the second form of action is not identical with the first, or different grounds for relief are set forth in the second suit</u>.

<u>Id.</u> at 291, 191 S.E. at 610 (emphasis added); <u>accord</u> <u>Saunders</u>, 235 Va. at 311, 367 S.E.2d at 495; <u>Snyder v. Exum</u>, 227 Va. 373, 377, 315 S.E.2d 216, 218 (1984); <u>see also</u> Restatement of Judgments (Second) § 25 and § 24 cmt. c.[1]

If the application of res judicata turned on whether the elements of the legal rights asserted were the same in both cases, the doctrine would bar only those legal rights based on the same legal theory and asserting the same grounds for relief.  A claim that "could have been litigated" would seldom, if ever, be barred.  For example, under the majority's holding today, a plaintiff could assert claims alleging intentional interference with contract and business expectancies, and conspiracy to injure another in trade or business in separate proceedings without fear of the second

---

[1] The Restatement of Judgments (Second) § 24 cmt. c. states:

> That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims.  This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.

proceeding being barred by the principles of res judicata even though the same events gave rise to both claims.

Davis' "second form of action" as well as the "grounds for relief" were obviously not identical with the form of action and grounds of relief set forth in the first case. Jones, 168 Va. at 291, 191 S.E. at 610. The second case alleged breach of contract while the first alleged fraud. Those differences, however, do not change the fact that the legal rights asserted by Davis arose out of a single "definable factual transaction." Allstar Towing, 231 Va. at 425, 344 S.E.2d at 906.

My conclusion is consistent with this Court's decision in Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B and C. Applying the Allstar Towing definition of the term "cause of action," we held that a second arbitration demand was barred by a prior arbitration award under the principles of res judicata. 251 Va. at 435, 468 S.E.2d at 905. In the first arbitration proceeding, the landowners asserted a breach of contract based on alleged design and construction defects in a bulkhead. Id. at 434, 468 S.E.2d at 904. The landowners argued that the second arbitration demand claiming breach of warranty was not identical to the first because the bulkhead had not failed at the time of the first demand. Id. We disagreed and

specifically stated that "[l]abeling the claim a breach of warranty rather than a breach of contract [did] not alter the nature of the claim." Id. at 435, 468 S.E.2d at 904. Similarly, different labeling does not alter the fact that both of Davis' claims arose out of a "definable factual transaction."

By analyzing identity of the cause of action in terms of the elements of the legal rights asserted and addressing that issue apart from the Allstar Towing definition of the term "cause of action," the majority is also able to say that the facts necessary to prove Davis' claim for fraud were different from the facts required to establish her breach of contract claim. In Brown, we stated that "[t]he test to determine whether claims are part of a single cause of action is whether the same evidence is necessary to prove each claim." 233 Va. at 216, 35 S.E.2d at 567.

However, unlike the majority, I do not believe that the "same evidence test" should be construed in terms of the elements of the legal rights asserted, nor should it be applied so narrowly as to require each piece of evidence to be exactly the same in both cases. See Restatement of Judgments (Second) § 25 cmt. b. Otherwise, as I have already stated, a claim that "could have been litigated" in a prior proceeding would never be barred. The doctrine of res judicata would

apply only when an unsuccessful plaintiff re-files the identical claim based on the same legal theory.

Thus, I conclude that the focus must be on the evidence that is "necessary" to successfully prove both claims. Here, in order to prevail on her fraud claim, Davis had to establish the existence of the loans, the nonpayment of the notes evidencing those loans, and the amounts due and owing. Although that evidence, without more, would not have established fraud, it did prove the breach of contract. In proving fraud, Davis at the same time proved breach of contract. Under the particular facts of this case, the fraud claim subsumed the breach of contract claim. For that reason, I conclude that the same evidence was necessary to prove both claims.

Finally, I would be remiss if I failed to discuss the impact of my analysis and conclusions on this Court's decision in Carter v. Hinkle, 189 Va. 1, 52 S.E.2d 135 (1949). The issue presented there was whether a person who had sustained both property damage and personal injury as the result of a single negligent act of a defendant could maintain two separate actions for the injuries or was a judgment obtained in an action for the property damage a bar to a subsequent action to recover for the personal injury. Id. at 3, 52 S.E.2d at 136. Aligning ourselves with the minority view,

this Court held that the common law rule allowing two actions in this situation still applied because the General Assembly had not changed or altered the common law in that respect. Id. at 12, 52 S.E.2d at 140.

I acknowledge that the separation of law and equity played no role in that decision. However, I conclude that the rationale for the holding in Carter remains sound in the particular situation presented there. In 1977, the General Assembly abrogated the common law with regard to pleading tort and contract claims in the same proceeding by enacting Code §§ 8.01-272 and –281. But, it did not alter the particular common law rule discussed in Carter even though the enactment of those statutes promotes judicial economy and an end to litigation while the common law rule in Carter does not.

Similarly, the General Assembly enacted Code § 8.01-6.1 in 1996. That statute states that an amendment of a pleading changing or adding a claim or defense relates back to the original pleading for purposes of the statute of limitations if, among other things, "the claim or defense asserted in the amended pleading arose of the conduct, transaction or occurrence set forth in the original pleading." The statute altered the limited definition of the term "cause of action"

41

employed by this Court in Vines v. Branch, 244 Va. 185, 418 S.E.2d 890 (1992).[2]

As with the enactment of Code §§ 8.01-272 and -281, the passage of Code § 8.01-6.1 reflected the General Assembly's shift to a transactional approach, but again the General Assembly left intact the common law rule followed in Carter. See Weathers v. Commonwealth, 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001) (General Assembly, when acting in an area, is presumed to know the applicable law as stated by an appellate court). And, I believe that it did so for good reasons. After an automobile accident causing injury to person and property, "[q]uestions involving the rights of automobile insurance carriers, both liability and collision, rights of assignees, receivers, trustees in bankruptcy, and subrogees, render it essential in certain cases to allow one action for

_____

[2] In Vines, we concluded that an amendment alleging breach of contract to a plaintiff's original motion for judgment in tort for the recovery of property stated a new cause of cause, and was thus barred by the applicable statute of limitations, because different elements needed to be proved and a different measure of recovery would apply. 244 Va. at 189, 418 S.E.2d at 893. Notably, both the original motion for judgment and the amendment arose out of the same transaction, specifically the events surrounding the plaintiff's purchase of an automobile and the defendant's placing the title of the vehicle in her name and retaining possession of it.
    The majority's analysis regarding identity of the cause of action is not consistent with the General Assembly's enactment of Code § 8.01-6.1 in response to the decision in Vines.

42

personal injury and another for property damage." Carter, 189 Va. at 12, 52 S.E.2d at 140.

For these reasons, I conclude that the doctrine of res judicata bars litigation of the present case alleging breach of contract. Therefore, I respectfully dissent and would affirm the judgment of the circuit court.

JUSTICE LEMONS, dissenting.

I join Justice Kinser's dissent in every respect and write separately only to emphasize the potential consequences of the majority opinion.

In essence, the majority pretends that the Court never decided Bates or Allstar Towing and ignores the special definition of "cause of action" adopted for the express purpose of res judicata analysis. In Bates, 214 Va. at 672 n.8, 202 S.E.2d at 921 n.8, we clearly stated that "[a] 'cause of action', for purposes of res judicata, may be broadly characterized as an assertion of particular legal rights which have arisen out of a definable factual transaction."

In Allstar Towing, we quoted the passage above from Bates, and in determining that res judicata did not bar the successive action, we stated the following: "In sum, the legal rights asserted in the second action arose from a factual transaction that was different from the factual transaction

giving rise to the assertion of legal rights in the first action." Allstar Towing, 231 Va. at 425, 344 S.E.2d at 906.

It is unmistakable that the Court embraced a transactional analysis for the purpose of res judicata. In doing so Virginia joined the majority of states. Today, without acknowledging its reversal, the majority ignores the special definition of "cause of action" for res judicata purposes and reverts to the national minority on this issue of great importance to individuals and businesses alike.

It is commonplace for a single transactional event to provide the foundation for multiple lawsuits. See, e.g., Simmons v. Miller, 261 Va. 561, 544 S.E.2d 666 (2001); Feddeman & Co. v. Langan Assocs., 260 Va. 35, 530 S.E.2d 668 (2000). In the hypothetical case of a business dispute that spawns multiple theories of recovery, the majority opinion would permit separate and successive lawsuits between the same parties on theories of breach of contract, breach of fiduciary duty, common law conspiracy, statutory conspiracy, common law fraud, constructive fraud, and conversion. Under the majority opinion, unless all of the elements are identical, res judicata would not prohibit successive suits between the same parties. Of course, the reason there are separate legal theories is precisely because there are differences in the elements of the causes of action. While the extent of

44

potential harassment of litigants and misuse of judicial
resources may be affected by the application of collateral
estoppel to narrow the matters subject to proof, and the
expiration of the statute of limitations may preclude a
particular cause of action, the reality of successive suits,
even in different venues, remains a potential consequence of
the majority opinion.

As these causes of action have proliferated in American
law, a restraining concept designed to promote judicial
efficiency and avoid harassment of litigants developed.  That
concept was the transactional analysis approach to the
application of the doctrine of res judicata.  While a litigant
could pursue multiple theories of recovery, the transactional
approach would permit such multiplicity, but only if the
courts and litigants were required to meet such challenges in
one proceeding.  With a transactional analysis, the correct
balance is achieved between access to the courts for
remediation of wrongs and freedom from successive harassment,
while husbanding judicial resources.  Perhaps that is why the
majority of jurisdictions have taken such an approach.
Perhaps that is why Virginia did as well in Bates and Allstar
Towing.  Perhaps that is why the General Assembly adopted a
transactional analysis as a predicate for Code §§ 8.01-272 and
-281.  Perhaps that is why it is so perplexing to witness this

inexplicable retreat in the face of such overwhelming

justification for transactional analysis in the application of

res judicata.

    I dissent.